No. 23-35499

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

JOHN DOE,

*Plaintiff-Appellant,*

v.

REVATURE LLC, HARVEY HILL,
SOPHIA GAVRILA, JULIE SEALS, CHEDRO CARDENAS,
BENJAMIN KEELER, OLIVIA KANE, OLA OGUNSANYA,
JALISA JOHNSON, and ADRIENNE BOULERIS,

*Defendants-Appellees.*

---

On Appeal From The United States District Court For The
Western District of Washington
Case No. 2:22-cv-01399-TL
Honorable Tana Lin

---

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

JOHN DOE, *pro se*
2501 Manor Rd #216
Austin, TX 78722
(206) 459 - 2748

**TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................1

**STATEMENT OF FACTS** ......................................................................4

**STATEMENT OF THE CASE** ...............................................................9

**I.  THE CIRCUMSTANCES IN THIS CASE SATISFY THE EXISTING REQUIREMENTS FOR ANONYMITY IN THE NINTH CIRCUIT** ...13

    A.  Anonymity Is Commonly Granted For Mental Illness.........................13

    B.  Other Sensitive and Highly Personal Details .......................................15

    C.  Anonymity for Admitting Criminal Conduct is Equally Persuasive.....16

    D.  Disclosing Plaintiff's Legal Name is Self-defeating Because it Incurs the Injury Being Litigated Against, an Absurd Situation ......................19

        1.  The Disclosure of ADA Protected Medical Information is the Primary Cause of Action, Contra District Court Finding............19

        2.  There Are Two Species of Self-Defeating Litigation Arguments Proffered, Both Misapprehended by the District Court .............20

        3.  Dissemination of Damaging Information That Is Also Inaccurate Should Be Carefully Avoided, the Infamous Streisand Effect ....22

    E.  Economic Injury Is Sufficient Justification For Anonymity, Contra District Court Finding .........................................................................24

    F.  Denying Anonymity Could Bar Access to Courts.................................26

    G.  Public Value of the Litigation Favors Granting Anonymity .................27

    H.  Character, Credibility, and Ulterior Motives ........................................28

**II.     REQUIRING DISCLOSURE THAT IS ILLEGAL UNDER THE PRIMARY CAUSE OF ACTION PRODUCES AN ABSURD RESULT THAT RENDERS PRIVACY LAWS INCOHERENT** ............................**30**

**III.    CONSTITUTIONAL RIGHTS TO PRIVACY SHOULD VASTLY OUTWEIGH THE PUBLIC RIGHT OF ACCESS TO PARTY IDENTITY** ...............................................**32**

    A.   Public Access Should Not Be Curtailed Without Good Cause .............33

    B.   Constitutional Rights to Privacy Versus Compelling State Interests ....34

    C.   Party Identity is Scarcely Relevant to Public Scrutiny of Issues ..........36

    D.   Medical Privacy is a Special Category of Privacy Right ......................37

    E.   Dimensions of Absurdity, Violate One Right to Vindicate Another......37

    F.   Constitutional Rights, Their Order and Congruency ...........................39

    G.   A Brave New World ................................................................39

**IV.    FIFTH AMENDMENT RIGHT TO AVOID SELF-INCRIMINATION IS CLEARLY APPLICABLE TO PSEUDONYMITY HERE**...............**41**

    A.   Fifth Amendment Applications to Pseudonymity as Practiced Throughout Federal Courts ...................................................42

    B.   The Fifth Amendment Protection Against Self-Incrimination Applies in the Present Circumstance ...................................................43

**V.     THE DISTRICT COURT ORDER STIPULATING THE CONTENTS OF THE FIRST AMENDED COMPLAINT IS NOT PROPER** ...........**44**

**CONCLUSION** ...............................................................**46**

## STATEMENT OF THE ISSUES

(i)     Whether Plaintiff's request to proceed anonymously should be granted using the current balancing test in the Ninth Circuit;

(ii)     Whether courts violate the absurdity principle when requiring litigants to disclose information that would be illegal under the cause of action;

(iii)     Whether courts compelling public disclosure of medical information violates constitutional rights to privacy;

(iv)     Whether disclosing Plaintiff's identity violates the Fifth Amendment right to avoid self-incrimination, given that his current fugitive status will figure prominently.

(v)     Whether the district court's order as to the contents of an amended complaint is proper under Rules 15(a) or 21, or the well-pleaded complaint doctrine.

## INTRODUCTION

This first appeal springs from an action brought under the Americans with Disabilities Act.  The Plaintiff, John Doe, was employed remotely in Seattle by Revature as an Associate Software Developer from August 23, 2021, until March 22nd, 2022, during which time his ADA protected medical information was improperly disclosed among supervisors, leading to pervasive harassment and discrimination, including vulgar sexual innuendo, which the company refused to respond to, eventually terminating

Plaintiff after he reported it in writing. Defendants then engaged in a conspiracy to obstruct justice by making false and defamatory statements to the EEOC. ER-48.

Plaintiff requested leave from the district court to proceed anonymously because of the sensitive nature of the medical information central to this case, *inter alia* (ER-39), citing existing Ninth Circuit precedent (ER-31), well established legal principles, and with avail to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. ER-28.

On July 18th, 2023, the district court denied Plaintiff's request for anonymity and dismissed the original complaint filed in October of 2022 (ER-48), with leave to amend. ER-2. Because filing an amended complaint under Plaintiff's legal name would cause the very harm the complaint seeks relief from, and because this order may instead have the effect of barring access to the courts altogether, Plaintiff timely filed notice of appeal on July 26th, 2023. ER-1.

The Plaintiff-Appellant believes the district court erred in failing to recognize that the circumstances in this case do indeed satisfy the current test for anonymity in the Ninth Circuit; that the district court erred by failing to appreciate that requiring disclosure of information that is illegal under the primary cause of action produces an "absurd result" that renders ADA confidentiality laws incoherent; that the court erred in failing to apprehend the Fourth and Fifth Amendment arguments against unreasonable searches and self-incrimination, concomitant with a Fourteenth Amendment due process right of privacy; and that the court's order regarding the contents of an amended

2

complaint is not proper. Thus, the district court's July 18 decision on anonymity was an abuse of discretion within the meaning of *DOES I THRU XXIII v. Advanced Textile Corp.*, 214 F.3d 1068 (9th Cir. 2000); *Doe v. Kamehameha Schools*, No. 09-15448 (9th Cir. Nov. 8, 2010).

Appellant Doe now turns to this Honorable Court for a declarative review of the existing Ninth Circuit test for anonymity.

## JURISDICTION

The district court has jurisdiction over Plaintiff's claims, liberally construed, based on federal law (the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20000e, et seq., and 42 U.S.C. §§ 1985(2) & 1986) under 28 U.S.C. §§ 1331, 1343. It has supplemental jurisdiction over Plaintiff's related state law claims (the Washington Law Against Discrimination, RCW Chapter 49.60, et seq., common law breach of contract and defamation) under 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's July 18 order (ER-2) forecloses a right that is separate from the merits of the case, making it a final order on the issue of Plaintiff's anonymity and subject to interlocutory appeal. See *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949). The district court has issued a stay pending this appeal, recognizing appealability under the collateral order doctrine with reference to *Advanced Textile*, *supra* 1065–67.

3

**STATEMENT OF FACTS**

In 2014, the Plaintiff-Appellant, John Doe, then an economics student in Seattle, attempted a citizen's arrest of a university professor in Virginia for felony computer crimes, including stalking and sexual harassment. Instead, Doe himself was arrested and charged with serious felonies. Sensational and inaccurate versions of the event that create a perception of disability made national news, along with Doe's mugshot, and are still available on the Internet today.

This 2014 incident was used as the basis for a diagnosis of disability which led to a verdict of Not Guilty by Reason of Insanity (NGRI) and Doe's commitment to a Virginia mental hospital in 2015. Doe has never believed that he has any mental illness and only reluctantly agreed to present the insanity defense because it was the only one available. Nonetheless, he was repeatedly misdiagnosed, most recently with "schizoaffective disorder (bipolar type)" in 2016, a mental disorder defined by The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, published by the American Psychiatric Association.

After Doe's conditional release from the hospital in 2017 and graduation from college in 2019 with a degree in cybersecurity, his first job offer as a Software Test Analyst with Alarm.com in Tysons Corner was withdrawn when the employer learned of the 2014 incident. Doe's background check reported *acquittals* for "kidnapping" and "malicious injury by acid," both of which are preposterous legal fictions in Virginia. When company HR asked about these charges, Doe talked openly about the incident,

showing the company the news stories from 2014, and explaining that he had been diagnosed with a disability, sent to the hospital and later released. The company decided they would rather violate the ADA than have Doe in the office and rescinded their job offer. This was reported to the Fairfax Office of Human Rights, who started an investigation in spring of 2020 and then vanished during the coronavirus closures. Doe was never able to defend himself.

This experience prompted Doe to change his legal name in 2020 to create a separate professional moniker that would prevent prospective employers from Googling his mugshots or running a background prescreen before extending him job offers. Doe also petitioned to have the 2014 acquittals expunged from court records but was told that the Supreme Court of Virginia had foreclosed this option for NGRI acquittees who are still on conditional release in *Eastlack v. Com.*, 710 S.E.2d 723, 282 Va. 120 (2011).

Meanwhile, this setback created frictions with the social workers at DHS who expected Doe to have a job before they would recommend his release from the circuit court in Virginia. Agreements were broken, case management guidelines were abandoned, leading to complaints from Doe and retaliation from the social workers. Doe was then denied his right to present evidence in court in August of 2020 and ultimately decided to flee Virginia to avoid arrest. A bench warrant for failure to appear for a civil hearing was issued in October, 2020, and Doe is now a fugitive.

Doe moved back to Seattle in fall of 2020 and began working for a small web hosting and cloud computing company doing technical support. Similar to what is

5

alleged in this complaint, a young woman in the office began looking Doe up online, discovered his former name, and began spreading gossip about his background. Other than a few snide remarks from coworkers, there were no consequences from this disclosure; Doe was friends with the company managers, they knew the story and were on his side. Unfortunately, the entire tech support department was outsourced to India in June of 2021.

After briefly working with Defendant Revature first in early 2020, Doe returned unexpectedly to Revature in August of 2021, signing a three year software development contract worth roughly 200,000 dollars. He would end up being pushed out of the company after facing several months of harassment and discrimination when news of his perceived disability spread among supervisors, as detailed in the present complaint. ER-48.

Doe then began working as a subcontracted Software Developer at Apple shortly after arriving in Austin, Texas, in March of 2022. Apple is a large, impersonal company, staffed almost entirely by remote contract workers, such that no one has any reason to take an interest in their coworkers, most of whom they will never see. As a result, there were no disability related issues at Apple. Doe was dismissed in the first round of tech layoffs in October of 2022.

When the tech hiring freeze began in winter of 2022, Doe took a job as a dishwasher in one of Meta's downtown Austin cafeterias. Meta also surreptitiously disclosed Doe's complicated background to their kitchen managers, who then leaked to

the kitchen staff, which Doe began hearing about during work in inappropriate ways. When Doe was singled out by a sous chef for no obvious reason, he put Meta on notice that any adverse employment decisions could lead to a lawsuit. While he was able to keep his job washing dishes, the harassment from management only intensified and it quickly became uncomfortable for Doe to be there.

Dispiritingly, Doe's only professional job offer in 6 months of washing dishes, a graveyard shift as a Network Engineer at Charter Communications in Austin, was withdrawn in June of this year when the clerk in Virginia erroneously reported on Doe's background check that he has a *criminal* record including an active warrant for the *misdemeanor* offense of "Violation Of Not Guilty By Reason of Insanity Conditional Release," leading to another employment lawsuit under the FCRA and ADA soon to be filed in Texas. Doe will again proceed under a pseudonym in that action for all the same reasons stated in this appeal.

Doe has resigned from Meta and now works as a barkeep in one of Austin's entertainment districts.

It was discovered last year that Virginia's NGRI procedures have been thoroughly unconstitutional for many decades.[1] Doe has filed a series of petitions for habeas relief that have now reached the U.S. District Court for the Eastern District of Virginia in

---

[1] See *Baxstrom v. Herold*, 383 U.S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966); *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992).

Alexandria, where there is a suit underway for more than 8 years of false imprisonment. Doe has so far proceeded pseudonymously using his former name in those actions.

Finally, in order to prevent any further harassment and discrimination, Doe will also need to file lawsuits for defamation and false light against several national news outlets that continue to create a perception of disability after being sent cease and desist notices. As in all other actions that involve Doe's alleged disability, he will need to proceed pseudonymously to protect his current legal name and professional identity, necessary to avoid amplifying the harm he seeks relief from.

## STATEMENT OF THE CASE

Broadly speaking, Ninth Circuit courts allow pseudonyms in unusual cases where it is "necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment." A*dvanced Textile*, *supra* at 1068. This echoes Fed.R.Civ.P. 26(c) which says "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, …"

Additionally, the Ninth Circuit has explicitly adopted the same criteria used by other circuits when evaluating requests for anonymity, which include: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; or (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct; (4) prejudice to the defendants; (5) public interest in revealing a party's identity. *Advanced Textile* at 1068.

Further, when evaluating fears of retaliation or injury, a district court should determine: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears*;* (3) the anonymous party's vulnerability to such retaliation. *Advanced Textile* at 1068.

However, *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), cited with approval in *Advanced Textile* and still among the most illustrative discussions of the issue, noted at 186, "We advance no hard and fast formula for ascertaining whether a party may sue anonymously. The decision requires a balancing of considerations calling for

maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." Unfortunately, despite the efforts of appellate courts to establish a decision-making framework for party anonymity, there is much confusion over requisite factors and the relative weights and measures involved in this balancing test.

The Plaintiff-Appellant filed the present complaint in the district court *pro se* under the pseudonym "John Doe" but included his legal name in other initial filings, following what little guidance he could find about how to file anonymously. The district court graciously sealed those filings containing Doe's legal name until further review, issuing an order for Plaintiff to show cause and state his reasons. ER-43.

Doe filed a response citing sensitive medical history that had already led to "harassment, injury, or ridicule" more than once, and noted the self-defeating prospect of further disclosures attached to his current legal name. ER-39.

After the district court ordered appointment of counsel from the pro bono committee, a supplement was filed by counsel citing Ninth Circuit cases where anonymity was granted to protect medical information, and also proffering Doe's fugitive status. ER-31. This supplemental filing unnecessarily confined arguments in support of anonymity to Ninth Circuit cases, whereas the Ninth Circuit has explicitly adopted the standards of all other circuits in *Advanced Textile.* Counsel also left both the court and his client with the impression that there is little support in the Ninth Circuit for anonymity based on mental illness, which is certainly not the case.

10

Doe asked pro bono counsel to withdraw and submitted a second supplement in support of anonymity, advancing more fundamental arguments that had been omitted; the first being an appeal to the absurd result principle upheld in *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S. Ct. 1981, 104 L. Ed. 2d 557 (1989) to argue that anonymity precedent is illogical and self-defeating if claiming a single damaging disclosure requires infinitely wider and more damaging disclosures; the second argument asserted constitutional rights to privacy and freedom from unreasonable searches under the Fourth, Fifth and Fourteenth Amendments, citing *Norman- Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998). The Fifth Amendment right to avoid self-incrimination was also invoked because counsel previously raised Doe's fugitive status. ER-28.

Opposing counsel has not responded to any of the anonymity related filings which can be taken as an acknowledgment that the request has merit. See ER-33. Defendants are all aware of Doe's identities, former and latter, and will not be prejudiced. The question for the district court was therefore the public's interest in knowing Doe's identity versus constitutional rights to privacy, the avoidance of absurdity and self-incrimination.

The district court's July 18, 2023, decision on these issues denied Plaintiff's request for anonymity and dismissed the initial complaint with leave to amend under Doe's legal name, provided that the amendment is *otherwise identical* to what is currently proposed. ER-20-21. There was considerable confusion about the application

11

of *Advanced Textile* in *Kamehameha Schools,* which is largely irrelevant here. The court was also mistaken about the "sensitive and highly personal" nature of Plaintiff's diagnosis, and even about the cause of action, finding it is *not* an ADA disclosure when it clearly is. The self-defeating litigation factor was misapprehended, as was the criminal conduct factor. Most concerning, the district court simply disregarded assertions of constitutional rights to privacy and avoidance of self-incrimination without adequate analysis. Thus, in the language of *Advanced Textile* at 1069, "the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, [and] struck an unreasonable balance of the relevant factors," triggering this appeal.

Notice of appeal was filed on July 26th, 2023, ER-1, the district court then issued a stay of proceedings *sua sponte* and no further motions have been filed.

**ARGUMENT**

## I. THE CIRCUMSTANCES IN THIS CASE SATISFY THE EXISTING TEST FOR ANONYMITY IN THE NINTH CIRCUIT

### A. Anonymity Is Commonly Granted For Mental Illness

Courts have routinely granted plaintiffs leave to proceed under pseudonyms when the facts of the case relate to psychiatric disorders, recognizing that (1) this information is sensitive and highly personal, and (2) likely to expose litigants to further harm. In these cases where the stigma is so apparent, leave for anonymity is often granted automatically, without discussion, as in *Doe v. Gallinot*, 486 F. Supp. 983 (C.D. Cal. 1979) (mental illness leading to multiple commitments); *Doe v. New York University*, 442 F. Supp. 522 (S.D.N.Y. 1978) (a medical student returning to school after some psychological issues); or more recently in *Doe v. Tonti Mgmt. Co*., No. 2:20-cv-02466-LMA-MBN (E.D. La. Sept. 11, 2020) ("major depressive disorder, anxiety, and PTSD caused by a sexual assault, need for emotional support animal"); *Doe v. Sessions*, No. 18-cv-0004-RC, 2018 WL 4637014, at 4 (D.D.C. Sept. 27, 2018) ("Asperger's Syndrome, Acute Stress Disorder, Panic Disorder, [PTSD], and anxiety"). This has likewise become common practice throughout the Ninth Circuit for all kinds of documented mental health issues, as Plaintiff's former counsel noted with reference to *Doe v. Rostker*, 89 F.R.D. 158, 161 (N.D. Cal. 1981) ("[t]he most common instances are cases involving … mental illness, … [;] … [t]he common thread running through these

cases is the presence of some social stigma … attaching to disclosure of their identities to the public record."). ER-33.

A survey of recent Ninth Circuit cases confirms anonymity is routinely granted for mental illness: *Doe v. State Bar of Cal.*, No. 3:20-cv-06442-LB (N.D. Cal. Sept. 21, 2020) (ADHD, generalized anxiety disorder, trichotillomania [compulsive pulling out of hair]); *Doe v. Unitedhealthcare Insurance Company*, No. 3:20-cv-06574-EMC (N.D. Cal. Sept. 24, 2020) ("confidential psychiatric treatment notes, which include accounts of childhood sexual abuse"); *Doe v. Spahn*, No. 1:21-cv-03409-TNM (N.D. Cal. Oct. 20, 2021), see Motion to Dismiss at 12 (Oct. 26, 2021) ("major depressive disorder and generalized anxiety disorder"); *Doe v. Lincoln Life Assurance Co. of Boston*, No. 3:22-cv-00694-JSC (N.D. Cal. Feb. 8, 2022) ("serious psychiatric health problems that resulted from bearing witness to the suicide of a coworker in her workplace.")

Here, Plaintiff-Appellant John Doe's diagnosis of schizoaffective disorder is a major psychiatric disorder that sounds like "schizophrenia" but has more in common with bipolar disorder. This diagnosis was sensitive enough to get Doe involuntarily committed to a Virginia mental hospital from 2015 - 2017 on the assertion that he might be a danger to public safety, and personal enough to be protected by numerous constitutional and statutory rights. Together with the national news stories that describe events which led to this diagnosis, and that give the impression that Doe is crazy, creating a perception of disability, this information, all of it inseparable from the operative facts in this case, has repeatedly gotten Doe harassed and/or fired from his job

where it has been disclosed. From the historical facts described above, since entering the job market after college in 2020, Doe has lost his job 60 percent of the time this information was disclosed to his employer (3 out of 5); where this information has been disclosed to coworkers, Doe has faced severe and pervasive harassment 67 percent of the time (2 out of 3). The events described in the present complaint caused Doe's blood pressure medication to stop working and he has sought counseling whenever it has been available. In short, the continuing ramifications of the 2014 incident have contributed to damages that will be very difficult to recover from.

From these facts, it is indisputable that (1) this information is sensitive and highly personal, and (2) likely to expose Doe to further harm if it is attached to his legal identity on the public record.

### B. Other Sensitive and Highly Personal Details

As mentioned in Plaintiff's first response on the issue of anonymity (ER-40), the unavoidable details in this case involve sex acts and innuendo, as well as drug use and false accusations of drug use. While Doe himself does not consider these topics particularly embarrassing or incriminating, they are offensive to the extent that the depictions are inaccurate, and they add to the salaciousness of the story and cumulatively increase the likelihood of further harm were this information made widely available. Indeed, it is hard to imagine a more scandal-prone story than the one presented in this case.

### C.   Anonymity for Admitting Criminal Conduct is Equally Persuasive

The district court misconstrued the criminal conduct factor for party anonymity because it was not well stated in *Advanced Textile*.   There is no requirement of *intent* to commit future crime, as the court found at ER-14, nor is it strictly necessary to fear arrest.   Fear of arrest and prosecution obviously has Fifth Amendment implications, which is an *absolute right.*   But justifying anonymity by having to admit criminal conduct, because we are stopping short of pleading the Fifth, should be viewed in terms of *social stigma*, contemplating the opprobrium engendered by admissions of criminality, regardless of whether arrest and prosecution is even possible.[2]

*Stegall*, *supra* at 186 tells us: "the [plaintiffs] have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior."   The other Fifth Circuit case cited approvingly in *Advanced Textile* worded the criminal element similarly, saying "[plaintiffs] had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct." *Southern Methodist University Ass'n v. Wynne & Jaffe*, 599 F.2d at 713 (5th Cir. 1979).

There is a litany of case law granting anonymity for past criminal conduct, particularly where plaintiffs are making fundamental legal challenges or expunging

---

[2] Of course, this should not be confused with past *convictions*, which are very definitely relevant public records.

records.[3]  In *United States v. Doe*, 556 F.2d at 393 (6th Cir. 1977) anonymity was granted "in order to prevent unnecessary dissemination of information [that is inaccurate]" because appellant's prior conviction had been set aside or annulled but had not yet been expunged. *Id.* at *393*.  The common theme among these cases is (a) the suit attacks the validity of government activity and (b) the information at issue is alleged to be inaccurate or invalid.  Similarly, Doe was never convicted of anything, yet *criminal offenses* are being erroneously reported on his background checks, and he is now wanted on a civil warrant *listing the felonies he was tried and acquitted of more than 8 years ago*.  Even though this present complaint is against a private employer, the information at issue is currently being challenged in other courts as both inaccurate and invalid, to include both habeas petitions and *Monell* actions.

It is not clear why the Plaintiff-Appellant's late attorney thought the bench warrant for Doe's arrest in Virginia would be pertinent to this case, though it is probably safe to assume that opposing counsel already knew the warrant or would soon discover it. Now that the issue has been raised (ER-31-32, 36): (1) Defendant Revature may proffer an after-acquired knowledge defense to the discriminatory or retaliatory termination claim, saying that they should have fired Doe earlier, or never hired him at all, had they

---

[3] See Doe v. Alaska, 122 F.3d 1070, 1070 (9th Cir. 1997); Doe v. Harris, 640 F.3d 972, 973 n.1 (9th Cir. 2011); Doe v. City of Albuquerque, 667 F.3d 1111, 1115 n.1 (10th Cir. 2012); Doe v. Wasden, No. 1:20-cv-00452-BLW, at 1 (D. Idaho Dec. 23, 2020), granting Motion, id. (Sept. 23, 2020); Doe v. Shurtleff, No. 1:08-cv-00064-TC, at 1, 16 (D. Utah Sept. 25, 2008); Doe AA v. King Cty., 15 Wash. App. 2d 710, 717 (2020); see also E.B. v. Landry, No. 19-cv-862, 2020 WL 5775148, at *3 (M.D. La. Sept. 28, 2020) (legal challenge to Louisiana's enforcement of its scheme for expungement of criminal convictions).

known previously about his fugitive status.  This would be a mitigating factor at best; (2) the warrant might also be relevant to Plaintiff's perspective while being harassed about his background since he was apprehensive that any questions from Revature regarding the resolution of matters in Virginia could get him fired, though this testimony would be only of tertiary importance; (3) more likely, his fugitive status could be used by any of the Defendants to attack Doe's character or impeach his credibility, to which he would be obliged to respond if the evidence were admitted.[4]  And since Doe has just had another formal job offer withdrawn, and it is not clear if that was because of a *civil* warrant, or the erroneous reporting of a *criminal* warrant or record, or because of the "insanity violation" that revealed the existence of a disability, some mention of the warrant is now unavoidably germane to this appeal in establishing stigma.

Disclosure of this information attached to Doe's legal name would tell the public he is a fugitive—an escaped mental patient, and could make him professionally unemployable at a time when he is already struggling financially, proceeding here *in forma pauperis* and vulnerable to becoming destitute.  Further, Doe *does intend* to remain a fugitive until the actions in Virginia are decided in his favor, and is at risk of

---

[4] It would therefore be appropriate to raise this issue preemptively, especially because there are several other reasons for proceeding anonymously, and thereby avoid having to seal this testimony later and block from public view an important collateral issue for Fifth Amendment reasons.

18

indictment and arrest under Va. Code § 19.2-182.15 which makes absconding from NGRI conditional release a felony.[5]

### D. Disclosing Plaintiff's Legal Name is Self-defeating Because it Incurs the Injury Being Litigated Against, an Absurd Situation

The self-defeating litigation argument appears in *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981) where the court recognized that "compelled disclosure of [plaintiff's] identities would vitiate the interests they seek to protect." *Id*. at 161. Here, the district court acknowledged the argument with citations to relatively mild Ninth Circuit cases both granting and denying anonymity (where the suit was borderline frivolous). ER-14. However, the court was mistaken about matters of fact and legal analysis.

#### 1. The Disclosure of ADA Protected Medical Information is the Primary Cause of Action, Contra District Court Finding

The district court was simply incorrect in its factual finding that the Plaintiff's initial complaint does *not* make a claim for improper disclosures of ADA protected medical information. ER-14-15. Admittedly, the complaint was poorly written, yet the very first claim #1 clearly states "[Defendant] Harvey Hill is presumed to have disclosed information about [Plaintiff's] disability to [Defendant] Sophia Gavrila," and claim #4 states "Ms. Gavrila surreptitiously forwarded a series of emails from [Plaintiff]

---

5 Code of Virginia § 19.2-182.15. Escape of persons placed on conditional release; penalty: Any person placed on conditional release pursuant to § 19.2-182.7 who leaves the Commonwealth without permission from the court which conditionally released the person shall be guilty of a Class 6 felony.

containing information related to [Plaintiff's] disability to a group of supervisors." ER-52. Also alleged as fact #3, "[Defendant] Seals and [Defendant] Cardenas let [Plaintiff] know they were in receipt of [Plaintiff's] emails to Ms. Gavrila containing information related to [Plaintiff's] disability." ER-53.

As pointed out in Plaintiff-Appellant Doe's supplement in support of anonymity (ER-28), the complaint's primary cause of action, the Americans With Disabilities Act, makes workplace disclosures of disability related information illegal in 42 U.S.C. § 12112(d)(3)(B), which reads, "information obtained regarding the medical condition or history of the applicant ... is treated as a confidential medical record." *McCarthy v. Brennan*, 230 F. Supp. 3d at 1066 (N.D. Cal. 2017) tells us that "The Ninth Circuit has not addressed the elements of an improper disclosure of medical records claim under the ADA or Rehabilitation Act, but courts that have require plaintiffs to establish that 'the disclosed information was confidential and that he suffered some kind of tangible injury as a result of the disclosure.'" *Id*. at 1066 (citing *McPherson v. O'Reilly Automotive, Inc.*, 491 F.3d 726, 732 (8th Cir. 2007)). Thus, the primary cause of action here *is,* in fact, the damage caused by ADA protected disclosures.

### 2. There Are Two Species of Self-Defeating Litigation Arguments Proffered, Both Misapprehended by the District Court

As noted in the procedural history above, the Plaintiff-Appellant did raise the "self-defeating" and "absurd result" arguments in his responses on the anonymity issue, though the language was perhaps imprecise and the points could have been made more explicit. See ER-28-29. The confusion appears to be around "protecting" against or

"avoiding" *future* disclosures versus seeking relief from *past* disclosures. Whatever the cause, the district court clearly misapprehended both of these valid arguments and failed in its legal analysis at ER-14-15.

First, this action, as a matter of course, *does now* seek a protective order from the court under Rule 26(c) to prevent future disclosures of the Plaintiff's medical history. This would presumably include a gag order against anyone with knowledge of the Plaintiff's identity and alleged disability from further disseminating this information. Moreover, the proposed amended complaint *does* seek injunctive relief against Defendant Revature LLC to order compliance with the law.

Second, the more salient point that was missed by the district court is that litigation becomes self-defeating and produces an "absurd result" if claiming damages for an isolated disclosure requires infinitely wider and more damaging disclosures. Because the plaintiff will incur the injury he is litigating against if his identity is made public, the litigation itself becomes an even more egregious violation of the primary cause of action. *It will amplify the harm he is seeking relief from.*

The influential Second Circuit has developed a more comprehensive test for anonymity in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d at 185 (2d Cir. 2008), formally incorporating the self-defeating litigation argument and noting that courts should consider "(3) … whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *Id* at 185. Buried among the citations in

21

*Advanced Textile* is *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992), where this *exact* language originates but was not quoted.

While many of the cases that have granted this self-defeating argument for presumptive anonymity are actions challenging government compelled disclosures of private information, as in *Rostker* (challenging Selective Service registration), or *Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) (challenging disclosures of prescriptions for scheduled substances); *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) (same), the self-defeating litigation argument should become even stronger and more presumptive when a legislature within the court's jurisdiction has already expressly forbidden the disclosure at issue. To restate for clarity: if there is a presumption of anonymity when challenging a government *compelled disclosure*, surely there is a stronger presumption when the government has *already forbidden the disclosure*. And this must be especially true when the disclosure *is the cause of action*. After all, for courts to compel a disclosure that would be illegal under the very cause of action defeats the purpose of all privacy law.

### 3. Dissemination of Damaging Information That Is Also Inaccurate Should Be Carefully Avoided, the Infamous Streisand Effect

Note that courts have taken special care with disclosures that are not only damaging but also inaccurate, as in *Doe v. United Servs. Life Ins. Co.*, 132 F.R.D. 437 (S.D.N.Y. 1988), where anonymity was granted because plaintiff objected to being smeared as fitting a "homosexual profile." Here too, Doe fits the "profile" of a mental patient but has never had a mental illness, despite the repeated diagnoses and years of

22

sham hearings. According to EEOC statistics for 2022, manic depressive disorder (aka bipolar disorder, most similar to Doe's diagnosis of schizoaffective disorder) is more than 6 times as stigmatizing compared to HIV from a purely quantitative standpoint. There were also more than 4 times as many claims for "Other Psychological Disorders" than for HIV related discrimination in 2022.[6]

Similarly, anonymity is often granted when the action is for defamation or some breach of confidentiality to avoid serving the controversy to an even larger audience via ECF records available through Google, especially considering the uncertain success and potentially ambiguous outcome of these actions.[7] This is the infamous "Streisand effect" of inadvertently amplifying the information that caused the suit to begin with, which again has self-defeating and "absurd result" implications. *Streisand v. Adelman,* Los Angeles Superior Court Case No. SC0772; *see also* Alexander v. Falk, No. 2:16-cv-02268-MMD-GWF, 2017 WL 3749573, at *5 (D. Nev. Aug. 30, 2017) ("requiring them to sue in their true names would potentially spread the damaging effects of the defamation to the arena of their private lives where it has not yet reached.")

---

[6] ADA CHARGE DATA by IMPAIRMENTS/BASES - RECEIPTS (Charges filed with EEOC) FY 1997 - FY 2022 https://www.eeoc.gov/data/ada-charge-data-impairmentsbases-receipts-charges-filed-eeoc-fy-1997-fy-2022

[7] See Roe v. Does 1–11, No. 20-cv-3788-MKB-SJB, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020); Plaintiff's Motion to Seal True Name of Defendant, Doe v. Billington, No. 21STCV22207 (Cal. Super. Ct. Aug. 12, 2021); Doe v. Doe 1, No. 1:16-cv-07359 (N.D. Ill. Aug. 24, 2016); Doe v. Bogan, No. 1:21-mc-00073, 2021 WL 3855686, at *21 (D.D.C. June 8, 2021); Doe v. Wash. Post Co., No. 1:19-cv-00477-UNA, 2019 WL 2336597, at *1 (D.D.C. Feb. 26, 2019); Patton v. Entercom Kansas City, LLC, No. 13-cv-2186-KHV, 2013 WL 3524157, at *3 (D. Kan. July 11, 2013).

The defamation claims in this case, wherein Defendants made several false statements to the EEOC and characterized Doe's charge as "illogical" and "not-rational" should be easily corrected. However, the underlying facts of the case will still leave the Googling public with the impression that Doe is an escaped mental patient accused of "kidnapping" and "malicious injury by acid," and implicated in recurring scandals involving sex and drugs, none of which is an accurate reflection of reality. And since this background information will not be directly challenged and *cannot be invalidated* in the present action, but will simply be displayed as evidence, this will only repeat the ludicrous slanders that Doe has tried carefully to avoid and is here unable to fully defend himself from.

### E. Economic Injury Is Sufficient Justification For Anonymity, Contra District Court Finding

The district court was wrong to conclude that economic harm is not enough to justify anonymity. There are many such cases. The prototypical case for purely economic harm, cited in *Advanced Textile,* is *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 106 (N.D. Ohio 1973) (permitting FLSA plaintiffs to proceed anonymously "in order to safeguard against any possible reprisals by their [multiple] employers that might result from the filing of this lawsuit"); see also *Doe v. Hodgson*, 344 F. Supp. 964 (S.D.N.Y. 1972) (same). Exotic dancers have repeatedly been granted anonymity based largely on generalized economic fears in *JANE ROES 1-2 v. SFBSC MANAGEMENT*, LLC, 77 F. Supp. 3d 990 (N.D. Cal. 2015) (surveying cases). Or in this FCRA action which also emphasizes the inaccuracy of the disclosure being litigated: *Doe v. Innovative Enters.,*

*Inc.*, No. 4:20-cv-00107-RCY-LRL, at 4 (E.D. Va. Aug. 25, 2020) ("Plaintiff risks impeding her future employment prospects by making the improperly disclosed information public knowledge."). Likewise for whistleblowers in cases such as *SEB Inv. Mgmt. AB v. Symantec Corp*., No. 18-cv-02902-WHA, 2021 WL 3487124, at *2 (N.D. Cal. Aug. 9, 2021) ("As whistleblowers at a technology company, they reasonably claim that current and future employers could learn about their prior whistleblowing. ... This order finds [plaintiffs] face a reasonably credible threat of some professional harm."); also *WHISTLEBLOWER 14106-10W v. COMMISSIONER OF INTERNAL REVENUE*, 137 T.C. 15 (T.C. 2011) ("The record reasonably supports the conclusion that disclosing petitioner's identity could adversely affect not merely petitioner's current employment but also petitioner's future employability.").

In a perfectly analogous case concerning disability, the court retroactively pseudonymized the plaintiff "so that [plaintiff's] privacy and reputation online around the medical disability" that formed the basis of the lawsuit "is not readily searchable," and "to prevent the Plaintiff from further employment discrimination which is gravely impacting her securing employment" *Doe v. Bryson*, No. 1:12-cv-10240 (D. Mass. Sept. 10, 2021); same conclusion in Eastern Washington on the theory that identifying the plaintiffs could lead to "severe" "economic and career consequences." Doe v. Elson S Floyd Coll. of Med. at Wash. State Univ., No. 2:20-cv-00145-SMJ, 2021 WL 4197366, at *2 (E.D. Wash. Mar. 24, 2021).

The distinguishing feature of these cases seems to be that fear of economic harm is either a cofactor among others that carry more weight, or that the plaintiffs are exceptionally vulnerable to irreparable employment consequences to the point of impoverishment, with its attendant "physical and mental" harms, should their identities become known (not unlike the circumstance in *Advanced Textile,* though not necessarily so extreme). This is in contrast to the famous finding in *Southern Methodist University Ass'n* where the plaintiffs were all well-fixed lawyers from a private university association bringing Title VII sexual harassment claims against two Dallas law firms over clerkships, and where there were *no compelling privacy interests* involved.

### F. Denying Anonymity Could Bar Access to Courts

As in *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979), pseudonymity will be denied where the plaintiff has "already suffered the worst of the publicity and embarrassment." *Id.* at 1125. Because of the other actions in Virginia, Texas, and elsewhere, revealing Doe's legal name here prevents him from using pseudonyms everywhere else. And since the actions in Virginia that attempt to resolve the underlying legal problems are the priority, and Doe has thus far proceeded pseudonymously there using his former name, denying anonymity here could bar access to the courts altogether in employment actions. If Doe cannot expect privacy in employment actions generally, he may be rendered defenseless against workplace abuses, since bringing this or any other suit in his legal name is certain to make the

situation worse while he continues to seek relief from the original sources of the problem.

Appellant's former counsel lifted a very insightful decision on the conflict between public access and a plaintiff's privacy in *Roe v. Providence Health Sys.-Oregon*, No. 06-1680-HU, 2007 U.S. Dist. LEXIS 50656 (D. Or. June 26, 2007), previewing the ultimate thesis of this appeal, "Jane Roe's allegations center on disability discrimination, an issue which carries important implications for disabled persons and for society as a whole. Should Jane Roe or her husband be mandated to provide their true identities, they may be deterred from continuing the lawsuit. Therefore, the public's interest in an open trial will not be impaired, and may actually be better served if plaintiffs' identities remain sealed," *Id.* at *11. ER-34.

### G. Public Value of the Litigation Favors Granting Anonymity

While this complaint is not against the government and primarily vindicates the Plaintiff's own interests, there are a number of public interest aspects to this case, not to mention the refinement of the anonymity criteria we are currently engaged with. Among the issues the public will see decided are:

(1) The Washington State Law Against Discrimination (WLAD), RCW 49.44.085, makes any contract requiring confidential dispute resolution of discrimination claims void and unenforceable. As in other states, courts have ruled that these laws are preempted by the Federal Arbitration Act, but the Washington law has not been challenged in federal courts.

(2)   The Ending Forced Arbitration Act (EFAA) and controversies surrounding the effective date of this law will be examined further.

(3)   Breach of contract, fraudulent concealment, and unconscionability claims which sever arbitration provisions from contracts in the manner prescribed by *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) will be adjudicated.

(4)   Defamation occurring post-termination will be decided as to whether these claims are definitively outside the scope of arbitration agreements. See *JAVERY v. Lockheed Martin Corporation*, Civil Action No. 14-2644 (E.D. La. Sept. 27, 2016); *Hearn v. COMCAST CABLE COMMUNICATIONS, LLC*, Civil Action No. 1: 19-CV-1198-TWT (N.D. Ga. Oct. 21, 2019).

(5)   Conspiracy to deny civil rights under 42 U.S.C. §§ 1985(2), 1986 will be examined given the historical intent and plainly applicable language.  This law should make a company's false statements to the EEOC under 18 U.S.C. § 1001 privately actionable and also presumably outside the scope of arbitration agreements in cases where statements are not *per se* defamatory.  This would achieve the public policy objective of encouraging companies to resolve these disputes internally, in good faith, rather than clog the civil rights agencies and courts with chicanery. See *Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993).

28

### H.    Character, Credibility, and Ulterior Motives

Because of the facts mentioned in this case, Doe's character and credibility will again be scrutinized.  Anonymous plaintiffs also sometimes arouse suspicion of malice or frivolousness or some other ulterior motive that goes unarticulated.  Jurists should be very cautious with assumptions here.

As an example of how easy it is to misunderstand the complex backstory in this case, the district court mistakenly concluded that the Plaintiff has a "criminal history." ER-10.  To be concise, Doe has done nothing wrong.  Not only because he failed the M'Naghten test of criminal intent when he was *acquitted* Not Guilty by Reason of Insanity but because the citizen's arrest of the professor in 2014 was lawful.  See *Burke v. Com.*, 515 S.E.2d 777, 30 Va. App. 89 (Ct. App. 1999); *Tharp v. Com.*, 270 S.E.2d 752, 221 Va. 487 (1980).  The insanity defense was raised on the third day of trial when it became clear Doe would be unable to present his primary defense.  At no point was Doe *pretending* to be "insane" to escape criminal liability.[8]

Perhaps more importantly, Doe did not change his name in March-July of 2020 with plans to escape; rather, he was denied a job and later forced to flee open corruption in October 2020 after exhausting every known recourse.  Moreover, that the NGRI process in Virginia is unconstitutional is not a close question; the statutes themselves are facially unconstitutional since "criminal commitment" was outlawed in the United States

---

[8] Noting with irony that the court in *Doe v. Harris*, 495 F. Supp. at 1170 (S.D.N.Y. 1980) openly suspects plaintiff made "a calculated [insanity] plea bargain to avoid a lengthy prison term" for murder and was still granted anonymity without discussion while challenging his confinement.

in 1966. See *Baxstrom*; *Addington*; *Foucha*. The Court can decide how much scholarship to read on this question.[9] Doe is now suing under Virginia's whistleblower statutes in addition to 42 U.S.C. § 1983 and common law false imprisonment.

Finally, this action is not malicious or frivolous and the evidence will bear that out. As explained to the EEOC, Doe was never looking for a reason to sue Revature or trying to get anyone at the company in trouble, but simply asking that they follow the rules so that he would have some reasonable expectation of fair treatment. What may appear litigious to some is an ongoing fight for survival to this Plaintiff, a defense of his right to have any sort of career or life. The district court's choice of citation in ER-8 (*D.C. v. Pierce Cnty.*) is therefore concerning to the extent that it was chosen non-randomly, and for reasons other than relevance.

Doe has stated all his reasons for anonymity; *their* character, credibility, and motivations should be self-evident.

## II.   REQUIRING DISCLOSURE THAT IS ILLEGAL UNDER THE PRIMARY CAUSE OF ACTION PRODUCES AN ABSURD RESULT THAT RENDERS PRIVACY LAWS INCOHERENT

The absurd result principle tells us that a legal system should never produce results that are illogical or that "shock the common sense." *Crooks v. Harrelson*, 282 U.S. 55, 51 S. Ct. 49, 75 L. Ed. 156 (1930). This has been a venerable principle of the

---

[9] For instance, Wendzel, Bailey. "Not Guilty, Yet Continuously Confined: Reforming the Insanity Defense." *Am. Crim. L. Rev.* 57 (2020): 391. https://www.law.georgetown.edu/american-criminal-law-review/wp-content/uploads/sites/15/2020/03/57-2-not-guilty-yet-continuously-confined-reforming-the-insanity-defense.pdf

Rule of Law doctrine since the beginning of the Anglo-American legal system, and has been upheld by the Supreme Court numerous times.[10]  It recognizes that a system of rules should be coherent and avoid contradicting itself because the system would then become arbitrary, capricious, and unpredictable.[11]

Absurdity is the principle that lies behind the anonymity test in the Second Circuit that considers "(3) … whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *Sealed Plaintiff, supra* at 185 (quoting *Doe v. Frank, supra*).  Plaintiff cited the *Bock Laundry* case (ER-29) to show that a statute that creates a cause of action for disclosing information about a disability (the ADA) would not intend further disclosures in order to claim damages.[12]  Whether viewed as a matter of statutory interpretation or of court precedent, this state of affairs where a law is violated by the act of having it enforced produces an illogical, contradictory, and profoundly absurd result.

---

[10] *United States* v. *Kirby,* 7 Wall. 482, 487 (1869); *FBI v. Abramson*, 456 U.S. 615, 102 S. Ct. 2054, 72 L. Ed. 2d 376 (1982); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988).

[11] Scalia, Antonin. "The Rule of Law as a Law of Rules." In *Precedents, Statutes, and Analysis of Legal Concepts*, pp. 231-244. Routledge, 2013; see also MacCormick, D. Neil, and Robert S. Summers. *Interpreting statutes: A comparative study*. Routledge, 2016; Dougherty, Veronica M. "Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation." *Am. UL Rev.* 44 (1994): 127.

[12] *Bock Laundry*, while not perfectly analogous here, is an interesting example of absurdity because it involves both statutory interpretation and court precedent that is *not* illogical.  It is possible that the legislature *intended* to impeach all plaintiffs convicted of crimes of moral turpitude, and the Justices practically pull up the floorboards of the House looking for that intent.  But in the end it *shocks the conscience* that plaintiffs would be subject to a different FRE test for prejudice than would defendants.

The Appellant is shocked to find that absurdity *per se* has apparently never been raised in the context of pseudonymous complaints in the federal courts before. It has been suggested by at least one case in the California Court of Appeals, *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436 (Ct. App. 2008), where the court concedes that (theoretical) plaintiffs, by filing suit against an employer under statutes designed to protect marijuana offenders from stigma and discrimination, "create the absurd result that [plaintiffs would] … further relinquish their privacy to enforce the statute" and "abandon those protections to assert their rights." The court goes on to recommend a pseudonymous complaint. *Id.* at 1452.

## III. CONSTITUTIONAL RIGHTS TO PRIVACY SHOULD VASTLY OUTWEIGH THE PUBLIC RIGHT OF ACCESS TO PARTY IDENTITY

The Supreme Court has never directly addressed party anonymity, though it has made tacit endorsements in cases like *Poe v. Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). Fed.R.Civ.P. 10(a) states that the parties should be named, but not that we should always and everywhere use their full *legal* names. As some scholars have pointed out, this rule was obviously intended as a style guide for the formatting of complaints and not as a requirement to use legal names.[13] Fed.R.Civ.P. 5.2, "Privacy Protection For Filings Made with the Court," requires that only a birth year and the last four digits of a social

---

[13] Rice, Carol M. "Meet John Doe: It Is Time for Federal Civil Procedure to Recognize John Doe Parties." *U. Pitt. L. Rev.* 57 (1995): 915.

security or taxpayer-identification number be revealed in any court filing to prevent positive identification.

### A.   Public Access Should Not Be Curtailed Without Good Cause

The need to identify the parties by their legal names is most aptly justified by a tradition of openness and the public's First Amendment right to access the courts and observe the administration of justice.[14] Justice Holmes, while serving on the Massachusetts Supreme Court, declared "[i]t is desirable that the trial of [civil] causes should take place under the public eye" *Cowley v. Pulsifer*, 137 Mass. 392 (1884), cited in *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984).  Accordingly, it has also been presumed, as a general practice, that the public should have access to the legal identity of the parties.  As Judge Posner put it, "identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997).

However, the Supreme Court has noted that exceptions to this public right of access are permissible, saying, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).  The court in

---

[14] See *Nixon v. Warner Communications*, 435 U.S. at 597, 98 S.Ct. at 1312 (1978); *Gannett Co. v. DePasquale*, 443 U.S. at 386, n. 15, 99 S.Ct. at 2908, n. 15 (1979); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. at 567, 100 S.Ct. at 2822 (1980).

*Publicker Industries* concurred that same year, adding, "[t]he party seeking the closure of a hearing or the sealing of a transcript bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order" *Id*. at 1071, citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1179 (6th Cir.1983); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866, 890 (E.D.Pa.1981).

### B.   Constitutional Rights to Privacy Versus Compelling State Interests

Here, the Plaintiff-Appellant is hoping to *improve* public visibility of the issues in this case by *not* closing hearings or sealing evidence, and requests only that his legal name and identifying information be withheld and redacted from the record to avoid irreparable harm.

The Plaintiff's supplemental motion in support of anonymity in the district court (ER-29), identified well established privacy rights in the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution protecting medical information from disclosure, citing *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d at 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality"). The district court again failed to apprehend the argument or simply chose not to address it before dismissing the pseudonymous complaint. ER-15, 22.

In *Poe v. Ullman,* Justice Harlan's dissenting opinion on medical privacy that would later be adopted by the court explained that "the full scope of the liberty

34

guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This 'liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Id*. at 543.

The recent Supreme Court ruling in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 597 U.S., 213 L. Ed. 2d 545 (2022) overturned the constitutional right of *decisions* within zones of privacy, but left intact the entire lineage of privacy law with respect to *disclosures*. *Id*. At 2238, 2268.   This means, as Justice Brennan's opinion in *Whalen* tells us, "a [serious] deprivation [of privacy] would only be consistent with the Constitution if it were necessary to promote a compelling state interest" *Id*. at 606-607.[15]   The constitutional test here is therefore whether the public has a compelling interest in a party's identity that can overcome the presumptive right of privacy in such sensitive and highly personal matters as medical information.[16]

---

[15] citing *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972).

[16] See *Denver Policemen's Protective Association v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir.1981), *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986), *Fraternal Order of Police, Lodge 5 v. Philadelphia*, 812 F.2d 105 (3d Cir. 1987).

### C. Party Identity is Scarcely Relevant to Public Scrutiny of Issues

In nearly all cases, the legal identity of a party has no effect whatever on the public's ability to view the evidence or observe the court's decisions on the issues.[17] Plaintiffs, in the absence of counterclaims or the need to impose sanctions for malice, frivolousness, or serial filings, etc, are not accused of anything, so it is a strained argument to say that their identities should be disclosed for reasons of accountability or fairness, especially where there is good cause for anonymity.  Indeed, it is hard to see *any compelling interest* in public right of access to a *plaintiff's* identity, particularly— much less how that right is weightier than this Plaintiff's multiple countervailing rights of privacy.

Professor Arthur R. Miller tells us that "[t]o protect privacy, … Rule 26(c) was designed to limit the use of discoverable information beyond the context of the litigation."[18]   But the legal identity of the parties is only very rarely involved in the context of the litigation.   The *James v. Jacobson* court*,* in a uniquely disturbing case cited in *Advanced Textile*, summarized matters this way: "With the fact of pseudonymity known to the jury, we think this would open to defendant every opportunity to impeach the credibility of the [plaintiffs] as witnesses that is ordinarily available … and it would seem to make no difference to a jury in assessing whether such things as the particular

---

[17] See *Stegall*, *supra* at 185, recognizing that "[p]arty anonymity does not obstruct the public's view of the issues ... or the court's performance in resolving them" (as quoted in *Advanced Textile*, *supra* at 1069).

[18] *See* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 447 (1991).

occupation or place of residence of a witness might bear upon his credibility whether the witness bore the name John Smith or Henry Williams." *Id*., *supra* at 242.

### D.    Medical Privacy is a Special Category of Privacy Right

The court in *United States v. Westinghouse Electric Corp*., 638 F.2d 570, 577 (3d Cir.1980), further points out that "[i]t has been recognized in various contexts that medical records and information stand on a different plane than other relevant material. For example, the [FRCP] impose a higher burden for discovery of reports of the physical and mental condition of a party or other person than for discovery generally. Compare [FRCP] 35 with [FRCP] 26(b). See also … Wright and Miller [at 8], *Federal Practice and Procedure*: Civil, §§ 2237, 2238 (1970).[19]  Medical files are the subject of a specific exemption under the Freedom of Information Act. 5 U.S.C. § 552(b)(6) (1976)." *Id*. at 577.

### E.    Dimensions of Absurdity, Violate One Right to Vindicate Another

The Appellant would add to this a more fundamental observation from 28 U.S.C. § 2071(a), which reads, "[FRCP] shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title."   In turn, § 2072(b) says, "[s]uch rules shall not abridge, enlarge or modify any substantive right."   Because the subject matter in this case involves sensitive medical information that impinges upon zones of privacy recognized by the U.S. Constitution, and also protected by numerous statutory rights, both state and federal, e.g. HIPAA, The Privacy Act—to include the

---

[19] Wright, Charles Alan, and Arthur Raphael Miller. "Federal practice and procedure." (1969).

primary cause of action: the ADA, it would seem, then, that the onus would be on the courts to provide some compelling reason that the public should know a party's identity when there are *much* more substantial reasons to withhold it.

Noting here with interest that this Court found a chilling effect on First Amendment freedom of speech where sex offenders in California were required to disclose their online pseudonyms to case managers because the reporting requirements, while content-neutral, were too onerous. *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014). Naturally, the plaintiffs were granted anonymity in that action. Contrasting not just with this case but with *Doe v. UNUM LIFE INS. CO. OF AMERICA*, 164 F. Supp. 3d 1140 (N.D. Cal. 2016), where an attorney brought suit against his insurer for treatment of an anxiety disorder that had become disabling, with hopes of returning to work in the legal profession, the court not only denied anonymity, because anxiety disorders are "common enough,"[20] but closed ECF access to the case so that only the plaintiff's colleagues in the legal community would know about his affliction. Had the court in *UNUM LIFE* simply recognized a constitutional right to privacy and redress commensurate with the speech right in the *Harris* case (rather than attempting to measure the severity of one illness or another, the associated stigma, the likelihood of further harm, etc) the proceedings would have been more efficient and perfectly visible to all.

---

[20] Anxiety disorders are more than 30 times more stigmatizing than HIV according to EEOC quantitative analysis for 2022, *supra* note 8.

### F. Constitutional Rights, Their Order and Congruency

To summarize, plaintiffs have a coequal right under the First Amendment to petition for a redress of grievances that logically *precedes* the public's right of access to the records. Plaintiffs also have a right to privacy and freedom from unreasonable searches and seizures that must be given deference if they are to bring certain claims at all. And since it is exceedingly rare that a plaintiff's legal identity is relevant to the issues in a case, and therefore would not obstruct the public view of proceedings were it withheld (and should even tend to improve visibility), it becomes difficult to see how requiring a plaintiff to disclose sensitive medical information under his true name is not an "arbitrary and purposeless imposition" abridging several substantive due process rights to privacy. Worse, these plaintiffs may be deterred from bringing their claims, producing a chilling effect on their First Amendment right to redress grievances. This is no small matter in the grand scheme of administering justice. To paraphrase one scholar: right of access, openness, and transparency are no good if the courts are empty.[21]

### G. A Brave New World

Of all the scholarship the Appellant has read in preparing this brief, some of it going back 40 years, it is *unanimously* in favor of greater latitude for allowing pseudonymous parties. The support for pseudonymity has become overwhelming in the last 20 years in large part because of the exponential growth of information technology and the access to court records via the CM/ECF system, available to anyone with a

---

[21] Ressler, Jayne S. "Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age." *U. Kan. L. Rev.* 53 (2004): 219.

PACER account.[22]   The decisions of federal courts are also available from Google. Thus, the magnitude and permanence of disclosures via the ECF system of sensitive and potentially damaging information is unprecedented in our jurisprudence and could not have been appreciated in the days of Norman Rockwell.  "Over a century ago, Samuel Warren and Louis Brandeis wrote that modern enterprise and invention have, through invasions upon [an individual's] privacy, subjected him to mental pain and distress, far greater than could be inflicted by mere bodily injury. The modern invention of today includes access to court files by those surfing the Internet." EW v. New York Blood Ctr., 213 F.R.D. 108, 112–13 (E.D.N.Y. 2003) (internal quotations omitted).

Worse still, ECF records are being scraped by data mining and brokerage firms and sold to international credit reporting agencies where auditing becomes impossible.[23] Palantir, to pick a data mining company entirely at random, is able to correlate a person's "home address, home telephone number, physical/mental information, social security number, and a photograph ... which enables the visualization of phone calls, emails, money, or any other material flows" such that designing a protective order that achieves what is called "impenetrable pseudonymity" becomes challenging.[24]   Because the Plaintiff here, John Doe, was required by FRCP Rule 11(a) to include his contact details in his initial filings, any subscriber to these data brokerages now knows his identity,

---

[22] See Solove, Daniel J. "Access and Aggregation: Public records, Privacy and the Constitution." *Minn. L. Rev.* 86 (2001): 1137.

[23] Solove, *supra* at 1179, *Aggregation: the Digital Biography*.

[24] Munn, Luke. "Seeing With Software: Palantir and the regulation of life." *Studies in Control Societies* (2017).

which may include many of his prospective employers, creditors, and insurers, not to mention people he might want to date or form any other kind of associations with. Now unable to cure that defect in the proceedings, he will have to satisfy himself with the possibility of thwarting only the most casual of Googlers.

## IV.  FIFTH AMENDMENT RIGHT TO AVOID SELF-INCRIMINATION IS CLEARLY APPLICABLE TO PSEUDONYMITY HERE

The Fifth Amendment right against self-incrimination applies solely "where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge." *Ullmann v. United States*, 350 U. S. 422, 438-39 (1956).[25]   The Supreme Court would later decide that this protection applies equally to incrimination under state laws. *Murphy v. Waterfront Comm'n of NY Harbor*, 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964).  This is an absolute right and not something bestowed at the discretion of the courts.   "The importance of preserving inviolate the privilege against compulsory self-incrimination has often been stated by this Court and need not be elaborated." *Couch v. United States*, 409 U.S. 322, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973).[26]

In what came to be known as the *Hoffman* standard, wherever a right to avoid self-incrimination is raised, before refusing the protection, a court is required to make "a careful consideration of all the circumstances in the case, [and show] that the witness is

---

[25] quoting *Boyd v. United States*, 116 U.S. 616, 634 (1886).

[26] citing *Counselman v. Hitchcock*, 142 U. S. 547 (1892); *Malloy v. Hogan*, 378 U. S. 1 (1964); *Miranda v. Arizona*, 384 U. S. 436 (1966).

mistaken, and that the answers cannot possibly have such tendency [to incriminate.]"
*Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951) (internal quotations omitted).[27] In this case, the "answers" involve revealing the true identity of John Doe. Plaintiff's former counsel raised the Fifth Amendment without an explicit invocation, saying "to the extent that Plaintiff's present [fugitive] status places him as acting outside of the law, he requests to proceed anonymously." ER-36. Plaintiff later invoked the Fifth in a second supplemental motion but did not reference counsel's earlier argument. ER-28. The district court responded by noting that disclosure of the arrest warrant was not compelled, and that it is unrelated to present claims, before simply declining to cover for Plaintiff's conduct. ER-14. The issue was maybe not properly briefed.

## A. Fifth Amendment Applications to Pseudonymity as Practiced Throughout Federal Courts

One of the more authoritative scholarly works on the topic of pseudonymity makes it overwhelmingly clear that the Fifth Amendment applies to requests for pseudonymity.[28] The Fifth Amendment protection against self-incrimination has also been proposed as a standard for pseudonymity in state supreme courts.[29] There are many

---

[27] quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1881), cited with approval in *Counselman v. Hitchcock*, 142 U. S. 547, 579-580 (1892). See also, *Arndstein v. McCarthy*, 254 U. S. 71 (1920).

[28] Steinman, Joan. "Public Trial, Pseudonymous Parties: When should litigants be permitted to keep their identities confidential." *Hastings LJ* 37 (1985): 58-63.

[29] Balla, Donald P. "John Doe Is Alive and Well: Designing Pseudonym Use in American Courts." *Ark. L. Rev.* 63 (2010): 703.

examples of this practice in the federal courts going back decades. Pseudonymity has been granted to protect against possible tax avoidance charges in *Doe v. Boyle*, 494 F.2d 1279 (4th Cir. 1974); see also *Doe v. United States Civil Serv. Com'n*, 483 F. Supp. 539 (S.D.N.Y. 1980) (granted because the case involved reports that the plaintiff was involved in petty theft, was "schizophrenic, a kleptomaniac" and a "compulsive thief"); see also challenges to contempt judgements in purely private matters such as *In re Doe*, 662 F.2d 1073 (4th Cir. 1981) (perjury, false statements, legal malpractice, etc); *In re Dr. John Doe, M.D.* 711 F. 2d 1187 (2nd Cir. 1983) (allegations concerning distribution of controlled substances); *Doe v. United States Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) (false statements).

Perhaps most analogous to the present situation, anonymity has been granted to illegal aliens whose existence outside the law places them at a disadvantage as they go about their lives. See *Doe v. Miller*, 573 F. Supp. 461 (N.D. Ill. 1983) (challenging food stamp eligibility); see also *Doe v. Plyler*, 458 F. Supp. 569 (E.D. Tex. 1978) (challenging exclusion from schools). The Plyler case reached the Supreme Court, implying another tacit endorsement for anonymity based on Fifth Amendment protections. See *Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982).

## B. Fifth Amendment Protection Against Self-Incrimination Applies in the Present Circumstance

As previously discussed, the existence of a warrant for Doe's arrest is likely to be used by Defendants to attack his character and credibility. The Defendants know Doe's current and former name, they know where to find the court records in Virginia, and it is

*exceedingly* likely they will continue to pursue a strategy of defamation at trial. Because independent evidence exists from which an adverse inference could be drawn (see *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000), citing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)), Doe would be obliged to respond to questions about the warrant or else risk impeachment in the manner of *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), and would then request to seal the entire issue for Fifth Amendment reasons were he proceeding under his legal name.[30]   Otherwise, Doe would either be automatically prejudiced by refusing to respond (which would be pointless because there is independent evidence), or would have to admit violating Va. Code § 19.2-182.15 under his legal name. Thus, it makes sense to raise the Fifth preemptively, anticipating the issue,[31] and ask that his legal name be withheld in favor of a pseudonym to avoid incrimination, which is by far the least restrictive solution in terms of public access.

## V.   THE DISTRICT COURT ORDER STIPULATING THE CONTENTS OF THE FIRST AMENDED COMPLAINT IS NOT PROPER

If it needs to be said, the district court's order instructing Plaintiff as to the contents of the amended complaint (order #4, ER20-21) is not proper under Fed.R.Civ.P. 15(a)(2) and 21, and the well-pleaded complaint doctrine. The proposed first amended

---

[30] see generally White, Marjorie S. "Plaintiff as Deponent: Invoking the Fifth Amendment." *U. Chi. L. Rev.* 48 (1981): 158.

[31] Noting that timely assertion is also required by *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); see also *Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981).

complaint presently before the district court withdrew all claims against some of the previously named individual Defendants (who are clearly getting bad legal advice) in hopes of minimizing their exposure, and chose instead to focus on the company's deliberate negligence and the principal architects of that conspiracy. However, reading further into the discovery process, it seems that responses to requests for admissions and interrogatories would not be available from non-parties who are no longer under the control of Defendant Revature without a subpoena. Because at least one of the Defendants has since left Revature (Olivia Kane, now Olivia Alford, formerly Revature's manager of federal contracts, importantly), and others may leave the company at any time, not having access to these Defendants during early discovery could open the door to further attempts at obfuscation from Defendant Revature, needlessly prolonging the litigation. Therefore, the Plaintiff-Appellant must now insist on naming all responsible parties in the first amended complaint. To avoid a second appeal on these grounds, Appellant is requesting instruction from this Court on Rule 15(a)(2) and 21, and the well-pleaded complaint doctrine to clarify that plaintiffs are absolute masters of their complaints.[32] If an amended complaint was in the interest of justice a few months ago, a nearly identical first amendment should still be in the interest of justice immediately following this appeal.

---

[32] *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).

## CONCLUSION

Because of the confusion in the courts surrounding tests for anonymity, Appellant is asking this Honorable Court for a DECLARATORY JUDGEMENT on the issues.[33] Those being, minimally: (1) *Advanced Textile* fails to mention that the most presumptive justification for anonymity is self-defeating litigation, (2) it misstates the criminal conduct factor without drawing a clear line at the Fifth Amendment, and (3) does not appropriately balance constitutional rights to privacy with regard to medical information.

Accordingly, for the reasons set forth above, the July 18, 2023, order of the district court should be reversed and the case remanded with instructions for the district court to enter an order granting anonymity, redacting Plaintiff's legal name and identifying information from all subsequent filings, leaving previous filings sealed. Lastly, that it is not the role of the courts to issue orders stipulating the contents of complaints.

Respectfully submitted and dated this Labor Day of **September 4th, 2023**.

s/John Doe
_____

JOHN DOE
*Plaintiff-Appellant, pro se*

2501 Manor Rd #216
Austin, TX 78722
(206) 459-2748

_____

[33] with consideration of the Second Circuit standard in *Sealed Plaintiff, supra* at 190

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35499

I am the attorney or self-represented party.

**This brief contains** | 12,233 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/John Doe | **Date** | 09-04-2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*